1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TODD S. HAYES,                          Case No.  1:20-cv-742-HBK

12              Plaintiff,                     OPINION AND ORDER AFFIRMING THE
                                              COMMISSIONER [2]
13        v.
                                              (Doc. No.  19)
14    KILOLO KIJAKAZI, Acting
      Commissioner of Social Security,[1]

15
                Defendant.
16

17        Todd S. Hayes ("Plaintiff") seeks judicial review of a final decision of the Commissioner

18   of Social Security ("Commissioner" or "Defendant") denying his application for supplemental

19   security income under the Social Security Act.  (Doc. No. 1).  The matter is currently before the

20   Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos.  19, 21,

21   22).  For the reasons stated, the Court affirms the Commissioner's decision.

22                              **I.  JURISDICTION**

23        Plaintiff filed for a period of disability and disability insurance benefits on August 29,

24

25   [1] This action was originally filed against Andrew Saul in his capacity as the Commissioner of Social
     Security.  (*See* Doc. 1 at 1).  The Court has substituted Kilolo Kijakazi, who has since been appointed the
26   Acting Commissioner of Social Security, as the defendant.  *See* Fed. R. Civ. P. 25(d).

27   [2] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §
     636(c)(1) and Eastern District of California Local Rule 302(c)(15).  (Doc. No. 11).
28

1   2016, alleging disability commencing on November 1, 2015.[3]  (AR 187-88).  Benefits were denied

2   on March 22, 2017, and again denied upon reconsideration on April 24, 2017. (AR 104-109).

3   Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on June 28, 2019.

4   (AR 40-66).  Plaintiff was represented by counsel and testified at the hearing.  (*Id.*).  The ALJ

5   denied benefits and the Appeals Council denied review. (AR 40-66, 1-6).  The matter is before

6   the Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.  BACKGROUND

8        The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

9   decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

10  summarized here.

11       Plaintiff was 53 years old at the time of the hearing, but 49 years old at the alleged onset

12  date.  (AR 32).  He worked as a painter but no longer does so because he cannot stand on his feet

13  all day long and has difficulty grasping things due to carpal tunnel syndrome.  (AR 48).  Plaintiff

14  testified his feet go numb when he stands too long, even when taking a shower.  (AR 49).

15  Plaintiff reported he can do yard chores, like mowing the lawn, weeding, and raking leaves, but

16  must take a break every 10 to 15 minutes.  (AR 47).  Plaintiff testified he did not have surgery for

17  the carpal tunnel syndrome because insurance would not cover it.  (AR 57).  He stated he could

18  walk for approximately 30 minutes, but after that time he requires a break.  (AR 58).

## III.  STANDARD OF REVIEW

20       A district court's review of a final decision of the Commissioner of Social Security is

21  governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

22  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

23  is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

24  evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

---

26  [3] Although close in time to the adoption of the new regulations, the old regulations apply in this case to the
27  extent the claim was filed in 2016.  For cases filed on or after March 27, 2017 the new regulations apply
    and change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules*
    *Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017);
28  20 C.F.R. §§ 404.1520c, 416.920c

1  conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

2  equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

3  citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

4  consider the entire record as a whole rather than searching for supporting evidence in isolation.

5  *Id.*

6  In reviewing a denial of benefits, a district court may not substitute its judgment for that of

7  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

8  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

9  2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

10  harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

11  nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

12  decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

13  U.S. 396, 409-10 (2009).

14  **IV.  SEQUENTIAL EVALUATION PROCESS**

15  A claimant must satisfy two conditions to be considered "disabled" within the meaning of

16  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

17  activity by reason of any medically determinable physical or mental impairment which can be

18  expected to result in death or which has lasted or can be expected to last for a continuous period

19  of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment

20  must be "of such severity that he is not only unable to do his previous work[,] but cannot,

21  considering his age, education, and work experience, engage in any other kind of substantial

22  gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

23  The Commissioner has established a five-step sequential analysis to determine whether a

24  claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the

25  Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the

26  claimant is engaged in "substantial gainful activity," the Commissioner must find that the

27  claimant is not disabled.  20 C.F.R. § 404.1520(b).

28  If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

3

two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20
C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of
impairments which significantly limits [his or her] physical or mental ability to do basic work
activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's
impairment does not satisfy this severity threshold, however, the Commissioner must find that the
claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe
impairments recognized by the Commissioner to be so severe as to preclude a person from
engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as
severe or more severe than one of the enumerated impairments, the Commissioner must find the
claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the
enumerated impairments, the Commissioner must pause to assess the claimant's "residual
functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's
ability to perform physical and mental work activities on a sustained basis despite his or her
limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the
analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the
claimant is capable of performing work that he or she has performed in the past (past relevant
work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant
work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If
the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the
claimant is capable of performing other work in the national economy.  20 C.F.R. §
404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider
vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §
404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must
find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable

1   of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

2   therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

3         The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

4   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

5   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

6   work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2);

7   *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

8   **VI.  ALJ'S FINDINGS**

9         At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

10  during the period of his alleged onset date of November 1, 2015, through the date of his last

11  insured of March 31, 2019. (AR at 23).  At step two, the ALJ determined Plaintiff had the

12  following severe impairments: osteoarthritis, degenerative joint disease of the bilateral knees,

13  COPD, bulging discs in the cervical spine and degenerative changes in the lumbar spine.  (AR

14  23).  At step three, the ALJ determined Plaintiff did not have an impairment or combination of

15  impairments that met or medically equaled the severity of one of the listed impairments.  (AR

16  25).  The ALJ then found Plaintiff had the RFC to

17
18          perform light work as defined in 20 CFR 404.1567(b) except the
            claimant can sit, stand and/or walk six hours in an eight-hour
19          workday.  He can frequently climb ramps, stairs, ladders, ropes or
            scaffolds, and can frequently balance, stoop, kneel, crouch or crawl.
20          He can frequently reach overhead bilaterally, and frequently handle
            and finger.

21  (AR 26).  At step four, the ALJ determined Plaintiff was unable to perform his past work as a

22  painter.  (AR 32).  At step five, the ALJ concluded, given the Plaintiff's age, education, work

23  experience and RFC, there were jobs available in the national economy including: cashier,

24  housekeeper cleaner, and photocopy machine operator.  (AR 33).  Therefore, the ALJ concluded

25  the Plaintiff was not disabled from November 1, 2015, the alleged onset date, through March 31,

26  2019, the date last insured. (AR 33).

27  **VII.  ISSUES**

28        Plaintiff seeks judicial review of the Commissioner's final decision denying his disability

insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issues for this Court's review:

> 1.  Whether the ALJ failed to provide a logical and rational basis for rejecting the limitations described by the examining and non-examining physicians; and

> 2.  Whether the ALJ failed to state clear and convincing reasons for rejecting Plaintiff's testimony that he takes a break every 10 to 15 minutes while performing yard chores.

(Doc. No. 19 at 7-14).

## VIII.  DISCUSSION

In pertinent part, the issues in this case can be generally summarized as whether the ALJ's finding that Plaintiff can sit, stand, or walk for a period of 6 hours in an 8-hour day is supported by substantial evidence.  (Doc. No. 22 at 7-12).  Plaintiff points out both Doctors Bobba and Pong determined Plaintiff could only walk for 4 to 6 hours in an 8-hour workday. Plaintiff faults the ALJ for not providing a logical and rational basis for rejecting the limitations of examining and non-examining physicians on this issue.  Sequentially, Plaintiff then takes issue with the RFC that provided Plaintiff could sit, stand, or walk in combination for 6 hours out of an 8-hour day as not supported by substantial evidence.  (Doc. No. 19 at 8-9).

In response, the Commissioner argues the ALJ properly found Plaintiff was capable of "light work" contrary to state agency physicians Bobba and Pong who both determined Plaintiff could do "medium work."  (Doc. No. 21 at 4-5).  Further, the Commissioner notes that the regulatory definition for "light work" means "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."  (*Id.* at 4).  The Commissioner concedes the ALJ's wording was a bit awkward to the extent it included "sitting," but contends multiple factors confirmed the ALJ's finding that Plaintiff could stand and/or walk for up to 6 hours combined. (*Id.*).  Thus, the Commissioner argues the ALJ's determination concerning Plaintiff's ability to stand or walk was consistent with the medical evidence.  (Doc. No. 21 at 4).

### A.  Medical Opinions and RFC

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3)

6

those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id*.  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id*. (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

        "Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 404.1513(a) (2013).  Nonetheless, , an ALJ still must  consider evidence from non-acceptable medical sources.  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. § 404.1527(f).  "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources.  20 C.F.R. § 404.1513(d) (2013). In rejecting the opinion of a non-acceptable medical source, the ALJ must give reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

        Here, the ALJ' provided a thorough review of Plaintiff's medical evidence, including the treating and examining physicians' notes.  Notably, the ALJ found that the medical evidence "does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis" as required by the listing.  (AR26).  Further, the ALJ noted that "no evidence that the [Plaintiff's back disorder has resulted in an inability to ambulate effectively." (*Id*).  The ALJ then reviewed in detail the medical findings from various medical procedures,

examinations and testing Plaintiff underwent, including: a right knee "arthroscopy for meniscectomy and chondroplasty of the patellofemoral joint" in in July 2010; a July 2014 physical examination for worker's compensation claim that found "no palpatory discomfort," "bilateral knee exam was unremarkable," "no atrophy," "normal gait" and "straight leg raise tests were negative" and "full range of motion in his joints;" EMG nerve testing; consultative examinations in June 2015, September 2016, November 2016; exams from February, March, April and June, July, August and October 2017; an emergency room visit in October 2018, when Plaintiff fell off a ladder, in which Plaintiff "had normal range of motion in his neck and extremities" but did show "tenderness and reduced range of motion in his lower back" but imaging revealed "mild degenerative changes;" and Plaintiff's June 2017 examination for his worker's compensation claim . (AR 26-27).

The ALJ then turned the medical opinions, and noted examining physicians Dr. L. Bobba and Dr. Pong believed Plaintiff could perform work at the medium exertion level with additional postural, manipulative, and environmental limitations. (AR 30). The ALJ gave Drs. Bobba's and Pong's opinions "partial weight" to the extent these examining physicians believed Plaintiff could do medium exertion work. (AR 30). The ALJ noted that medium level work is consistent with the exams where Plaintiff showed "full extremity strength, full range of motion, intact sensation and reflexes, negative straight leg raise tests, clear lungs and normal ambulation." (AR 30) (citing AR 252-258; AR 283-286; AR 336, AR 355, AR 540; AR 574; AR 629; AR 640-646; AR 651-652; AR 669). However, the ALJ noted evidence in the medical record to support a reduction to light work based on several exams where Plaintiff had "antalgic gait, tenderness in his knee and spine, as well as imaging showing multiple bulging discs and stenosis in his spine." (AR 30) (citing AR 521; AR 651-652; AR 851).

The ALJ also considered the opinion of examining physician Dr. Rustom Damania. (AR 30). Dr. Damania opined that:

> the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and walk four to six hours out of an eight hour work day, **sit four to six hours out of an eight hour work** day but cannot perform frequent kneeling, squatting, bending, stooping or crouching, no climbing or balancing and his ability to

> perform frequent handling, grasping or fingering may be impaired (15F).

(AR 30)(emphasis added).  The ALJ found examining physician Damania's opinion that claimant could do reduced range of light work was consistent with exams but gave the opinion "partial weight" to the extent that Dr. Damania limited Plaintiff's postural and manipulative limitations, finding them inconsistent with the Plaintiff's reported activities, such as raking leaves, climbing ladders, cleaning gutters, shopping, driving, cooking, and performing house cleaning.  (AR 31) (citing AR 253-256; AR 283-286).

The ALJ also gave "little weight" to the opinion of chiropractor Lonnie Powell, D.C, who gave several opinions in records:

> including an opinion that Plaintiff should not return to work for several weeks following an injury and an opinion stating the claimant could **only stand and walk for less than two hours a day**, occasionally perform manipulative activities, rarely use foot controls, never climb, kneel, crouch or crawl, would miss 20-25 days of work a month and would be off task 25% of the work day (11F/4; 18F).

(AR 30)(emphasis added).  The ALJ explained she assigned "little weight" to chiropractor Powell because a chiropractor is not an acceptable medical source under agency rules. (AR 30).  Further, the ALJ explained chiropractor Powell's opinions were not supported because he did not cite to any objective medical evidence in support.  (AR 30).  Moreover, the ALJ noted chiropractor Powell's opinions about Plaintiff's limitations were not consistent with the claimant's reported activities and abilities, including raking leaves, climbing ladders, cleaning gutters, shopping, driving, cooking, and home cleaning.  (AR at 30) (citing AR 253-256; AR 283-286).

The ALJ then determined that Plaintiff qualified for "light work" as opposed to the "medium exertion level work" as opined by the examining physicians.  (*See* AR 29-30) (noting "[t]o be sure, the claimant's impairments do cause significant limitations that prevent him from performing a full range of light work.  The evidence showed the claimant has impairments that would cause pain and weakness in his knees and spine, as well as shortness of breath."); (*see also* AR 31) (noting "[h]aving considered all the evidence, including medical records not cited herein, the undersigned finds the claimant's allegations of disabling impairments not fully consistent with

1  the evidence as a whole.  However, consistent with the record, the undersigned reduced the

2  resident functional capacity as indicated above [to light work], in accordance with the claimant's

3  impairments.).

4        The Court finds there is no discrepancy in the ALJ's opinion based on this record.  The

5  ALJ was not required to pick one medical opinion and adopt it in full.  Instead, based on the

6  record as a whole, the ALJ developed the RFC.  Three of the examining physicians, Drs. Bobba,

7  Pong, and Damania, found Plaintiff capable of standing or walking for 4 to 6 hours out of an 8-

8  hour day.  The ALJ appears to have credited that portion of their opinions and incorporated that

9  description, or limitation, in the RFC.  To the extent the ALJ gave little weight to chiropractor

10  Powell's opinion, the ALJ properly noted that the chiropractor's opinion was not a treating source

11  opinion, was not based on objective medical evidence, and other evidence in the record supported

12  a contrary finding.  *Bray,* 554 F.3d at 1228 (quotation and citation omitted).  The ALJ provided

13  germane reasons for assigning little weight to chiropractor Powell's opinion.  Here, the ALJ

14  ultimately found Plaintiff was capable of standing or walking up at the higher end, up to 6 hours,

15  of the examining physicians' opinions.  As noted by the Commissioner a finding that a claimant is

16  limited to less than 6 hours of standing and/or walking in an 8-hour workday fits within the

17  definition of "light work" cited by the ALJ in this case.

18        The RFC assessment is an administrative finding based on all relevant evidence in the

19  record, not just medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In

20  determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are

21  credible and supported by substantial evidence in the record.  (*Id.*) (RFC determination will be

22  affirmed if supported by substantial evidence).  An ALJ's RFC findings need only be consistent

23  with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613

24  F.3d 1217, 1222-23 (9th Cir. 2010).

25        Contrary to Plaintiff's argument, the verbiage in the RFC set forth *supra* is not confusing

26  or unclear.  Further, the limitations were not confusing when read in context of the hypotheticals

27  presented to the vocational expert.  A review of the record shows the vocational expert

28  understood the ALJ was asking about availability of jobs for a claimant with light exertion levels,

or in one hypothetical medium exertion levels, with limitations for walking and standing to 6 hours or less in an 8-hour workday.  (AR 60-65).  The RFC was supported by substantial evidence.

### B.  Symptom Claims

Plaintiff next assigned error to the ALJ for improperly discounting Plaintiff's testimony on his ability to stand and walk without providing clear and convincing reasons.  (Doc. 19 at 12-5).

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, there was no finding that Plaintiff was malingering.  Therefore, for the ALJ to reject Plaintiff's self-reported limitations, the ALJ must give clear and convincing reasons for doing so.

The ALJ cited the proper standard, noting Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.  (AR at 29).  The ALJ then proceeded to note specific reasons, supported by the record, for discounting Plaintiff's subjective complaints of pain.

First, the ALJ noted inconsistencies between reports in the medical records and Plaintiff's testimony during the hearing and inconsistencies demonstrated by Plaintiff's daily living activities.  (AR at 29).  In evaluating the severity of Plaintiff's symptoms, the ALJ may consider inconsistencies in Plaintiff's statements, and between his testimony and his conduct.  *See Thomas*, 278 F.3d at 958-59; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (prior inconsistent statements may be considered).  As noted by the ALJ, Plaintiff's self-reported pain levels documented in the medical records spanning a two-year period of time from 2016 to 2018 were generally 0-3 on a scale of 1 to 10.  In other words, more than half the time during these two years Plaintiff reported the lowest levels of pain.  (AR 29) (citing AR at 698-699).  The pain level reported by Plaintiff never exceeded a level 6 out of 10.  (AR 698-99).

Regarding Plaintiff's daily living, the ALJ cites to Plaintiff's ability to "perform a wide range of chores and activities," including raking leaves, getting on roof to clean gutters, performing yard work and getting on ladders to put up Halloween decorations.  (AR 29) (citing AR at 253-258, 284-290, 669-671, 703).  Additionally, Plaintiff also reported he was able to take care of pets, drive, go shopping, cook, barbeque, attend social events and parties.  (AR 29) (citing AR 253-258, 284-290).  A claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair*, 885 F.2d at 603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability.").  Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a).  Such

was the case here based on the inconsistencies noted by the ALJ, along with the objective medical reports.

The ALJ also considered the objective medical evidence that showed improvement in Plaintiff's knees following surgery in 2010.  (AR at 27-31).  While the ALJ may not rely solely on objective medical evidence to reject Plaintiff's symptom claims, it is a factor that the ALJ can consider.  *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1151, 1161 (9th Cir. 2008) (finding that inconsistency with objective medical evidence is a sufficient basis for rejecting subjective symptom testimony).  Reports documented in medical records in both July of 2014 and July 2015 were similar in that Plaintiff reported "no palpatory discomfort, his bilateral knee exam was unremarkable, he had no atrophy, full strength and sensation, normal gait, straight leg tests were negative, and he had full range of motion in his joints." (AR 27) (citing AR 336).  Regarding Plaintiff's reported carpal tunnel syndrome, an EMG nerve test did not reveal significant carpal tunnel syndrome or radiculopathy.  (AR 27) (citing AR 352). When Plaintiff did report pain in his neck, knees, and back, the findings were mild to moderate in severity.  (AR 27) (citing AR 540).  And the objective examinations revealed "no evidence of tenderness or reduced range of motion.  He also had full muscle strength, normal reflexes, and intact sensation." (AR 27) (citing AR 540).

The ALJ further noted Plaintiff's conservative medical treatment because Plaintiff did not require any surgeries or hospitalizations.  (AR  29).  It is proper for an ALJ to discount a claimant's allegations of pain based on conservative treatment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  Based on the foregoing reasons, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective complaints.

## IX.  CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly considered the medical opinion evidence and provided clear and

1  convincing reasons for discounting Plaintiff's symptomology testimony.  After review, the Court

2  finds the ALJ's decision is supported by substantial evidence and free of harmful legal error

3        Accordingly, it is **ORDERED**:

4        1.  The decision of the Commissioner of Social Security is AFFIRMED for the reasons set

5  forth above.

6        2.  The Clerk is directed to enter judgment in favor of the Commissioner of Social

7  Security, terminate any pending motions/deadlines, and close this case.

8

9  Dated:    March 23, 2022

10                                      HELENA M. BARCH-KUCHTA
                                        UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14